Case number 16-7035, Josephine McAllister and L. Appellants v. District of Columbia. Mr. Tirca for the appellants, Mr. Love for the appellate. Thank you. May it please the Court? Go ahead. Good morning. I'm Douglas Tirca. I represent the plaintiff appellants who moved for fees in the Court below. As this Court is aware, the District Court had the task of determining the market rate for this type of work for purposes of determining whether the requested rates were out of line with that rate. The District Court erred in determining that rate in two major ways. The first is that the District Court completely ignored the plaintiff's clear evidence of what the market rate for this work is. You mean the evidence that you attached to your reply brief? Yes, that evidence. Completely ignored that evidence. How can it be an abuse of discretion for the District Court to disregard evidence attached to a reply brief when the local rules permit just that? Well, first of all, regarding the District's raising of that issue before this Court, I'd say the District itself waived that defense when it failed to request leave for a surreply. Yeah, but the case you cite for that doesn't say that. The case you cite for that, it's a due process case, and all it says is that there was no due process violation in there because the petitioner, the plaintiff, could have filed a surreply. I don't know of any rule of this Court or the local rule which requires the defendant to file a surreply to raise a forfeiture issue. I mean, the rule itself says you can't raise things in the reply brief that are new. Well, I'll move on to the other reasons for it. The second reason is that the rule or the decisions of this Court refer to arguments and issues raised for the first time in a reply, and that is not what was raised. I'm talking about the local rule of the District Court. The local rule of the District Court. The District Judge was just following the local rule. The local rule does not prohibit the introduction of evidence with a reply in support of an existing argument. But you have to make the point that it's an abuse of discretion, right? That's the standard. Yes. Okay. So why was it an abuse of discretion? This abuse of discretion regarded the unprincipled disregard of record evidence. So that evidence is perfectly allowed to introduce new evidence in support of existing arguments and issues in a reply, which is what we did. Secondarily, as the Court is aware, the law either changed or was clarified in the intervening time. By Ely? By Ely. But this Court had made clear years before Ely and Covington that you could prove established the reasonableness of rates through other kinds of evidence. What was clarified in Ely was that a – so coming into the motion for fees for the District Court, and this is the fees for fees, the Court, as we know, limited it to a five-page motion, I believe, and that motion referred to what had been raised earlier. I'm sorry. Yes, Ron? I'm sorry. Say that again. Sure. The District Court limited the fees for fees motion to five pages. Therefore? So the plaintiffs incorporated by reference their earlier arguments for the rates for the substantive IDA litigation. No, my point is that the affidavits, the declarations that you say the District Court abused of discretion by ignoring, you could have filed with your opening brief. Yes, but prior to Ely, this Court had not indicated that the evidence submitted in the opening motion was insufficient. So the evidence in the motion incorporated by reference was two – there were two branches. One was reference to a Latin matrix. The other was an affidavit from counsel. Yeah. The District moves for the fees for fees proceeding to be held, to be held in abeyance pending Ely. Right. Excuse me. Not pending Ely. Pending an appeal in this case. As it happens, in that period, Ely comes down. Ely comes down and addresses exactly the type of evidence that had been submitted in this case and said a Latin matrix alone cannot be used to apply here because you have to prove complexity. Secondarily, counsel's affidavit alone cannot establish the market. We're back in this case following Ely. The District files its opposition, and in our reply, because of the Ely holding, we bolster our case with two more affidavits regarding the market. We said nothing more about the matrix. That part was not addressed any further, but we bolstered it with two more affidavits. My only question was, under Covington, you could have submitted that evidence in your opening brief. We could have, but prior to Ely, there had been no statement from this Court. What about Covington? No statement from this Court that counsel's affidavit alone was insufficient to establish the market. That's what Ely held for the first time. Did you have a separate problem that you submitted these exact same declarations in Reed v. D.C. and it was an abuse of discretion not to address them there, so why would it be here? I don't think the Court said it was an abuse of discretion not to address them, but the Court did find the evidence. It was an abuse of discretion and the Court didn't address them. The Court found insufficient evidence of something very specific. The Court found insufficient evidence that the fees litigation was, I don't remember if the Court said more complex, or just different than the substantive litigation. In this case, both parties and the Court agreed that the rate for the fees litigation should be a different rate than the substantive fees, the fees for the substantive litigation. You don't have a problem with that. Is that right? The idea that the fees are different because the work is different? No, I argued for it. I thought before us you argued two things as far as I can tell. One, that the district court disregarded or refused to consider your two declarations, right? And number two, that the district court erred by relying on previous district court decisions establishing rates, right? Relying solely on those cases, yes. Those are your two arguments. Correct. You didn't argue that, having established that the rate for the underlying case was 75% of Lafey rates, that that was automatically the rate for the fees on fee part, right? I did not make that argument. We were arguing for a rate higher than that. So coming into the fees... I bet that's a problem. I didn't... You're arguing for a rate... So your argument is that the fees on fee litigation is more complex than the underlying merits case? No, and I think that's an interesting part of the decision. The decision talks only about complexity. The complexity question is only relevant to a matrix question. As the court knows from Reed, and Judge Tatel in particular in your concurrence in Reed, that discussion of complexity has everything to do with the word complex and Lafey and some cases following it. And Ely made that a major issue regarding the applicability of a matrix to the IDEAs. Ely said you have to prove complexity. In our reply in the fees for fees motion in this case, we said nothing more about the matrix. So we made no attempt to meet that complexity burden in this case. Instead, we focused entirely on what the actual market rate is, which is independent of the complexity question. Well, on the showing that you made about the rate, if you didn't disregard what you said, we'd like more, 640. We realize you denied that for the underlying litigation. We'll rely on the court's judgment of whether any rate beyond what the court awarded is reasonable. And then you submitted an attorney declaration and then two declarations that don't mention a rate. So I'm having trouble understanding what you even did to show a rate other than saying we'd like 640. We recognize that's a problem. We'll rely on your judgment. And then neither of your declarations mentions a rate, unless I'm misreading them. If I may, Your Honor, so if we look at the declarations, these are on 121 through 124 of the appendix. And the first one on 121. It talks about total bills and hourly rate, but it doesn't tell me what the rate is. Oh, well, that rate had already been presented to the court. How do we know that's what the rate of the declaration is talking about? Because they refer to standard rates, and they also refer to, excuse me. So in paragraph 5 on 121, this is the first affidavit. The other firm available charges rates comparable to those charged by Turk & Associates. How do I know what, how do we know what that is? That is in the original affidavit, which is. Okay. We're supposed to trust that they were looking at that and using that number, but it's not in their declaration. Well, Ms. Hassan also refers on 123, paragraph 3. I have retained Turk & Associates at the firm's customary rates. But we are told again in the declaration she's not attesting to what that rate is. Well, those customary rates were already established on 138 now with the appendix. There's, again, an unchallenged affidavit. Those are what the customary rates are. But the only, let me go back to your arguments here. You just agreed with me that the two arguments you make here are, first, that the district court erred by not considering your two declarations, and second, that the district court relied on district court decisions in other cases. Solely on those, yes. Yeah. And so if I think, if I don't agree with you on the first point, because I think the district court had discretion to do that, and if I think Covington holds that district courts can rely on other district court decisions when those decisions themselves have evidence of prevailing rate, do you lose? If this court's interpretation of Covington is that it allows the district court to do what it did in this case. But the district court just relied on other district court decisions, which themselves had evidence of market rates, namely the Laffey matrix, right? Respectfully, the second part of that statement is not true. It isn't? No. If we go to those decisions, so they start with Smith. Oddly, in Smith, despite the fact that it is cited in later cases, in Smith itself, the rates are not determined from any matrix as far as I can tell. What I see in Smith, and this is- What about the other three cases? So the other three cases just trace back to Smith. So we have Wright, which cites only Smith. Then we have Garvin, which cites only Wright. And then we have Means, which cites an R&R, which cites only Garvin, Wright, and Smith. So your theory, I think I now understand your point. So your approach, you bring a lot of these cases, so this is sort of a generic question. Your theory is that you're not worried about Ely and the whole complexity issue because you think you can get the higher rates based on showing that there's actually a higher market rate. That's your strategy, right? In this case, for fees on fees, the argument has nothing to do with a matrix, therefore nothing to do with the complexity part of Ely. It's just a question of what do other lawyers handling this kind of case get, right? It is limited by Ely to the degree that, again, that Ely said you can't have counsel's affidavit alone. That was a new part of Ely. So you do have to bolster it with more than counsel's affidavit as we have. But, yes, this has nothing to do with the matrix anymore. It was at the time of the motion, pre-Ely, that was one of the two arguments. I see. All right. Anything else? Okay. Thank you. Thank you. Good morning, and may it please the Court. Richard Love for the District of Columbia. I think counsel's just admitted, first of all, that there was a new argument raised in the reply brief. In the reply brief, he makes an argument based on evidence of the market for idea fee litigation, but his prior argument was based solely on his billing rate and that it matched those in the Laffey matrix. So there is a new argument here, and the Court wasn't required to consider these statements. I'm curious why you didn't move to strike in the district court. I don't think we have any requirement to strike the affidavits, and that's the best I can answer. I didn't handle the case, but I can. We just don't have any evidence the district court exercised its discretion not to look at the declaration. At least not one way or the other because no one raised the issue at the district court. Correct. We have no evidence one way or the other. The second, if I could address the intervening change of the law, it really was not an intervening change in the law. It merely applied law. It applied Blum, which required attorneys to supply this kind of information in addition to their own affidavit, and that was a 1984 case, and then Covington as well reiterated that requirement, and that's a 1995 case. So it really didn't apply new law and wasn't an intervening change in the law. And moreover, I don't think that the statements, for the reasons we've articulated in our brief, provide any material evidence of what the prevailing market rate for fee litigation is in IDEA cases. It doesn't indicate what the precise fee that was received in those two cases that the affidavit's reference was, let alone establish what attorneys receive on average from fee-paying clients in IDEA fee litigation. But don't the affidavits just say these are the fees we receive? The fees they're seeking are the fees we receive. No, it simply says that they retained the Turka firm at its customary rates, and it doesn't indicate what was paid at all. I don't know what the retainer agreement says, even if you accept that their customary rate actually refers back to some affidavit that Mr. Turka filed two years early. So it doesn't indicate that, and it doesn't indicate clearly, you know, well, is that an apparent rate, even if it did indicate it was actually paid, whether that's the average rate that attorneys receive for this type of litigation. What is your answer to their argument about the lack of evidence in the district court cases that this district court relied on? Right. Well, I disagree. I mean, when he refers back to, you know, means, refers back to Garvin, which relates back to Smith, you know, they're talking about fees-on-fees decisions that reduced or made some downward reduction because of the lack of complexity or the simplicity of the fee litigation. But the underlying decision was based on laughing market rates in Garvin and in Means, in all three of those cases. Well, in Means they say it wasn't disputed what the rate was. There just wasn't a contest about it. So there wasn't an evidentiary determination. Well, yes. But the underlying decision which applied the rate for the substantive work was based on the laughing matrix, and it was based on decisions that applied the laughing matrix. All three cases were. And then they made a downward reduction from that rate to account for the simplicity of the fee litigation. So, I mean, the root of the decisions was based on laughing rates. They decided in all three of those cases, Means, Garvin, and Wright, the substantive rate, the rate for the substantive idea litigation was based on some percentage of the laughing matrix. In one of them it was 100 percent. The other two were 75 percent. And then all three made a reduction from whatever rate they had applied for the substantive work to account for the simplicity of the fee litigation. And that's how it got reduced to 50 percent. Do you need evidence for that second reduction? I think that's your point. If there's no evidence, they just said, well, this was simple, and then what happened? I think the evidence was that the district court, particularly in the absence of the plaintiffs establishing the reasonableness of the rate that they requested, had to make a decision as to what the reasonable rate was. And based on the difference in the complexity of the work between the substantive litigation and the fee litigation, the district court reasonably assigned some different valuation in that rate. Here it was only 25 percent. In one of those four cases it was actually a 50 percent reduction from 100 to 50 percent. So I think it was reasonable for the district court to assign a lower value, but it wasn't based on a vacuum. It was based basically on a reduction from Laffey, which back in the 80s was based on a market survey and then has been increased pursuant to different methods. And was the same district court judge at both stages here or not? Compare and handle the merits? You mean in the four cases? No, no, no. I'm saying just in your case, in the two stages of the McAllister case, same one. Yes, it's the same judge. So how does that factor into our- Well, I think- The judge was sitting there and saw the two cases, right? The same district judge who made a decision based on market evidence and other fee decisions of the value of the substantive work and the same judge who then knew what the particulars of the fee litigation were and made a factual finding as to its simplicity was in a position to know whether or not that work merited the same rate or some reduction for some reason that I think is acceptable and complexity is an acceptable reason and reasonably applied a 25% reduction to account for that. So I think it bolsters the reasonableness of the district court's decision here because the district court evaluated both the substantive and the fee litigation. All right. Anything else? If nothing further, I'd ask the Court to affirm the court's decision. Thank you. Did Mr. Turk have any time left? You can take one minute. Thank you, Your Honor. The prior cases did not use the matrix as noted by Judge Williams. They used a percentage of the matrix. And we heard counsel repeatedly say- But they did begin with the matrix. They did begin with the matrix, which, of course, was then invalidated later on by Ely. But we just heard counsel say repeatedly that what the court did was reasonable here and reasonable there. It is not as broad a standard as reasonable. It has to be based on market evidence. And as Judge Williams, I think, was noting, whether or not the original rates for the substantive litigation in those cases was based on market evidence, and in fact it was not, whether or not it was, the reduction to 50% was entirely arbitrary based on nothing. The district has not pointed to a single piece of evidence of the market. Getting back to another question of Judge Williams when I was up here before, I didn't fully finish it. I think it was Judge Millett. No? Excuse me? Oh, Millett. Excuse me, Judge Williams. Excuse me. Another question from Judge Millett when I was here before. If Reed is to be applied in this case, then what we would be left with is something that neither side has argued for, but would be the applicability of the same rate to both phases of the litigation. So neither was asked for that, but that's where we would be, a rate that would be in between what we had requested and what the district sought. Finally, regarding the impact of Ely, Ely did make it impossible for IDEA fee litigants to rely entirely on the Laffey matrix. That was a substantial change that certainly had never been said before, and that's exactly what caused us to have to bolster our case in our reply, again, with just additional facts. But, Cunningham, you could always have relied on the rates that other lawyers handling similar cases charge. We could have done that. We could have generated an entire survey. There's much we could have done. That's what Cunningham said. Doesn't Cunningham allow that? But we made a case that was, prior to Ely, believed to be sufficient that had been used by other district court judges before, in fact, in Ely itself. And so when this court came down to Ely and said, no, that case is no longer sufficient, it had to be bolstered. But it was in support of the same arguments that these were the prevailing market rates, an argument we had always made. Okay. All right. Thank you. Case submitted. Thank you.
judges: Tatel, Millett, Williams